THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES MOORE, Defendant-Appellant.

Second District   No. 76-548

Opinion filed May 3, 1978.—Supplemental opinion filed on rehearing August 3, 1978.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant James Moore was convicted in a jury trial of rape and armed robbery arising from an alleged "home invasion." He was sentenced to a single term of not less than 25 years nor more than 45 years in the penitentiary, to be served concurrently with a sentence in Will County. (See *People v. Moore*, 55 Ill. App. 3d 706 (1977).) He appeals, contending that various trial errors and the improper argument of the prosecutor deprived him of a fair trial. He alternatively contends that the trial court erred in entering judgments of conviction on each of the two counts of armed robbery.

Knox Steinbrecher, the complaining witness in this case, testified that she was in the bedroom of her Highland Park residence on September 12, 1975, at about 12:30 p.m., that she turned toward the door and saw a man pointing a gun at her. The man tied her hands behind her back and told her to lie face down on the bed. He blindfolded her and demanded to know where her purse was located. When the witness told him she could not remember, the man rummaged around opening and closing drawers. When he returned to the bedroom he dumped the contents of her purse on the bed. He then turned the witness over onto her back and raped her. Following this he tied her feet together, gagged her and left. She found that there was $64 in currency missing from various parts of the house, including a jar containing approximately $4 in pennies. Her driver's license and Master Charge were missing from her purse. She made a positive identification of the defendant at trial as the intruder.

The complaining witness told Officer Marchinowski who investigated the crime that she had observed her assailant for 10 seconds and she gave a detailed physical description. On cross-examination the witness admitted that she was quite upset when she spoke to the officer and did not mention in her description to him any facial hair on her attacker. She also admitted that in a statement made later in the day to detectives she said that right after the incident happened she would be absolutely able to recognize the man but added, "I am less confident of that now." Her

testimony also shows that she was unsure if the man had a moustache. She further testified that she accompanied a detective to Joliet on September 30 to observe a lineup and there identified the defendant as the man who raped and robbed her. Under cross-examination she admitted that she knew from a newspaper account the name and description of the man from whom her driver's license and Master Charge had been recovered. The police officer testified substantially in corroboration of the testimony of the complaining witness.

By stipulation the jury was informed that an officer would testify that Knox Steinbrecher's driver's license and Master Charge card were found in Moore's apartment.

The prosecution also presented the testimony of Joanne Harrison who was the complaining witness in a separate prosecution against the defendant. (See *People v. Moore* (1977), 55 Ill. App. 3d 706.) She gave a detailed account of a rape and robbery committed upon her in Joliet on September 18, 1975. She said a man whom she identified in court as the defendant pointed a gun at her, tied her hands behind her back, walked to a bedroom and told her to lie face down on the bed, opened and closed dresser drawers in other rooms, then put a covering over her head and raped her. Following this the defendant tied her feet, put a gag in her mouth and left. The witness testified that her automobile and a coin bank belonging to her father were missing and that a driver's license was missing from her purse.

Detective Persicketti of the Joliet Police Department testified to a search of defendant's apartment in Joliet where they found the driver's licenses of Knox Steinbrecher and Joanne Harrison and also Steinbrecher's missing Master Charge card. On cross-examination Persicketti also testified to finding the driver's license and credit card of one Violet Blackburn in defendant's apartment.

The defendant did not testify. However, the defense presented a number of witnesses in support of the apparent theory that while the defendant may have been guilty of receiving stolen property he was not the individual who raped and robbed either Knox Steinbrecher or Joanne Harrison.

Highland Park police officers were called by the defense and testified that they were unable to identify any fingerprints in the Steinbrecher home which belonged to the defendant. There was also testimony that the fingerprints found at the Harrison house did not match the fingerprints of the defendant; and further testimony that no sample of combings and hair standards from Joanne Harrison or from the defendant were found on each other's person. The defense also offered expert testimony that a sample taken of defendant's saliva was determined to be type AB; and that tests conducted on the materials on which spermatozoa was found in

connection with the Steinbrecher rape showed that there was no AB type bodily fluid present. The expert testified that to a reasonable degree of serological or chemical certainty none of the stains examined contained any of the bodily fluids from the saliva examined. On cross-examination the expert said that he did not test for type O. In rebuttal the prosecution presented a serologist who testified that if the procedure were conducted without testing for O type antigens using anti-H antisera as a control, the test would be inconclusive. However, on surrebuttal the defense's expert testified that anti-H antisera had nothing to do with the testing for A and B type antigens. There was also a conflict in the testimony of the experts as to whether the proper testing could be made on material which had not been refrigerated in the 5-month period that it was held. The prosecution's witness implied that it could not be done, the defense expert testified that material could be reliably tested for typing of a fluid although it had not been refrigerated for that period.

The defense also introduced evidence of a third home invasion, that of Violet Blackburn in Will County. A deputy sheriff for Will County testified that the victim said that she was coming out of her bedroom when a man jumped out from behind the kitchen table with a gun, made her lay face down on the bed and tied her hands behind her back, then left with her purse which contained her driver's license and credit cards. The witness testified that the license and credit cards were recovered from defendant's apartment. He also testified that Violet Blackburn was shown a photograph of defendant but that she did not identify him as the intruder.

In addition the defense called defendant's supervisor at work who in substance testified that defendant was working on the day when Violet Blackburn was robbed. The defense also presented evidence to the effect that defendant wore a moustache on September 13, 1975, relative to the testimony of the complaining witness that she saw no moustache on her assailant.

Defendant first argues that he was prejudiced because the prosecutor unfairly bolstered its weak identification testimony by erroneously introducing evidence of other offenses. Evidence revealing other offenses is not admissible purely to bolster the credibility of a witness. (*People v. Romero*, 66 Ill. 2d 325, 331 (1977).) As a general rule, evidence of other offenses is inadmissible even though it tends to prove a fact in issue unless it is relevant for a purpose other than to show the defendant's propensity to commit a crime. Such evidence may be introduced for example, "to show motive, intent, identity, absence of mistake or *modus operandi*." (*People v. McDonald*, 62 Ill. 2d 448, 455 (1975).) This court has held that "the actual need for the evidence," even though relevant, "must be

considered in light of the relevant issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect its admission will have upon the jury." (*People v. Butler*, 31 Ill. App. 3d 78, 80 (1975); *People v. Henenberg*, 37 Ill. App. 3d 464, 468 (1976). See also *People v. Jones*, 55 Ill. App. 3d 446, 452 (1977).) The trial court's determination as to the admissibility of evidence of other crimes will not be reversed unless it is clearly an abuse of sound judicial discretion. See *People v. Funches*, 59 Ill. App. 3d 71 (1978).

■■ We find no abuse of discretion on this record. The evidence that defendant was positively identified as the person who robbed and raped another victim, Joanne Harrison, a few days prior to his alleged assault upon the complaining witness in this case, bore striking similarity to the circumstances of the present crime. In each case the crime was committed during the day time in a residential neighborhood, a gun was used, the victim was told to turn around, her hands tied behind her back, her eyes covered and the house searched. Thereafter in each case the victim was raped, her legs were bound, and she was gagged. Money, in particular coins, driver's licenses and credit cards were taken. Moreover, since the theory of the defense was that defendant's only criminal activity was to receive stolen driver's licenses and charge plates, it was critical to the State's case to prove that his *modus operandi* included coming into possession of such articles by robbery and rape. *Cf. People v. Middleton*, 38 Ill. App. 3d 984, 989 (1976).

■■ Defendant, in fact, conceded that the *modus operandi* involved in both the instant crime ano the Harrison crime were the same when he offered evidence of even a third home invasion, that of the Blackburn home, in which the preliminary circumstances were similar and a driver's license and credit cards were taken, to be later found in defendant's apartment. Defendant's theory was that he was not the one who committed these essentially similar acts, but that he in each case ended up with stolen items in his possession. Even though defendant elected not to testify in the trial court his defense and argument must be judged by the rule that one who chooses to explain his possession of stolen property must offer a reasonable story or be judged by its improbabilities. (*People v. McIntosh*, 48 Ill. App. 3d 694, 700 (1977).) The jury obviously chose not to believe his explanation or his theory of defense.

■■ Defendant's further argument that the court erred in allowing Mrs. Harrison to testify to the details of the other offense is not supported by our opinion in *People v. Butler*, 31 Ill. App. 3d 78 (1975), relied upon by the defendant. In *Butler*, the details of the other crime elicited from the witness were clearly unrelated to the crime for which the defendant was being tried and were, in addition, unnecessary for the purpose for which

they were offered, to establish identity. Here, the details of the testimony of Joanne Harrison were the very basis for the showing that there was a similar occurrence with the same *modus operandi.*

We also conclude that the prosecutor's closing argument did not prevent a fair trial. Before a case is reversed because of prejudicial argument it must appear that in the light of all of the evidence of a defendant's guilt, the prosecutor's argument in its entirety substantially prejudices the defendant and constitutes a material factor in his conviction. *People v. Nilsson,* 44 Ill. 2d 244, 248 (1970); *People v. Fort,* 44 Ill. App. 3d 62, 67-68 (1976); *People v. Kitchen,* 53 Ill. App. 3d 521, 524-25 (1977).

■■ Here the prosecutor argued to the jury in summation that they paid his salary and he "would not waste your money in prosecuting an innocent man." A State's Attorney may properly describe himself as a representative of the People and may dwell upon his responsibility to enforce the law. (See, *e.g., People v. Clark,* 104 Ill. App. 2d 12, 24 (1968).) However, it is improper for the prosecutor to inform the jury of his individual opinion or personal belief in a defendant's guilt unless his comment is made in particular reference to the evidence. *(People v. Hoffman,* 399 Ill. 57, 65 (1948); *People v. Fort,* 44 Ill. App. 3d 62, 67 (1976); *People v. Anthony,* 41 Ill. App. 3d 1025, 1029-30 (1976); *People v. Fleming,* 32 Ill. App. 3d 418, 421 (1975).) The statement constituted error. However, we do not find the argument to be of the nature that substantially prejudiced the defendant and constituted a material factor in his conviction and therefore do not consider that this argument is a basis for reversal.

■■ The further argument of the State's Attorney that Joanne Harrison identified the defendant in the same lineup from which Knox Steinbrecher had identified him has been conceded by the State to be a misstatement of the evidence. The record does not reflect that Joanne Harrison identified the defendant in a lineup. However, the prejudicial effect of the error is small because Joanne Harrison did, in fact, identify the defendant in court.

The defendant also argues that the State's Attorney engaged in an unfair trial tactic when he called a serology expert in rebuttal and elicited the opinion that the defense expert's opinion that defendant's bodily fluids were excluded was unreliable because the sample had not been kept refrigerated by the State. The defendant argues that the aspirate was at all times in question prior to defendant's testing in the custody or control of the State and that the State may not secure an unfair advantage which deprives a defendant of due process when it fails to preserve physical evidence under its control.

■■ In conjunction with the duty to disclose evidence to a defendant

(*Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, 1196-97 (1963)), it has been held that there is also a duty not to dispose of evidence favorable to a defendant. (*United States v. Bryant,* 439 F. 2d 642 (D.C. Cir. 1971).) The duty was not violated on this record. There might have been an element of unfairness if it appeared that no effective testing could have been made because of a failure to refrigerate the aspirate. The defendant's expert, however, categorically stated that the aspirate sample could be successfully tested to determine the presence of antigens and that his opinion would not be different if he knew that the sample had not been kept under refrigeration since there was no observable mold or bacteria present. The State's expert in chief had testified that refrigeration was necessary to inhibit the growth of bacteria but also testified that one of the vials of the aspirate contained saline solution which acted as a preservative. Even the State's rebuttal expert did not categorically state that the value of the material for testing purposes was destroyed by the failure of refrigeration, but instead challenged the various methods which the defense expert had used and from which he concluded that the defendant's expert report was inconclusive. The jury was fairly given the opposing sides of the argument and we find no prejudicial error.

■■ Defendant has also contended that if we do not reverse or remand for the errors claimed that we should vacate one of the convictions for armed robbery. We agree, however, with the argument of the State that the act of taking the victim's money supports a charge different from that supported by the act of taking her credit card and driver's license and that one is not a lesser included offense of the other. Multiple convictions were therefore proper. *People v. King,* 66 Ill. 2d 551 (1977).

The judgment is affirmed.

Affirmed.

BOYLE and NASH, JJ., concur.

## SUPPLEMENTAL OPINION ON REHEARING

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In his petition for rehearing which we granted, defendant argues that in *People v. Manning,* 71 Ill. 2d 132 (1978), the supreme court modified the rule which was established in *People v. King,* 66 Ill. 2d 551, 566 (1977) relative to concurrent sentencing. Specifically defendant refers to the Supreme Court's quotation of *Braden v. United States,* 270 F. 441, 444 (8th Cir. 1920), which states in part:

"If twelve articles were all taken at the same time and place, we do not think it would be competent to charge the thief with twelve different larcenies." (71 Ill. 2d 132, 135.)

From this dicta defendant contends that since both the taking of the money and the taking of the credit card and driver's license occurred in a single incident, the defendant is subject to only one conviction for armed robbery.

We do not agree that the rule expressed in *People v. King* was modified in *People v. Manning*. To analyze the argument, however, we find it necessary to discuss additional facts which appear in the record.

One count of armed robbery is based upon the driver's license and Master Charge card which were taken from the presence of the victim. In this regard the complaining witness testified that the defendant asked her where her purse was located. Initially she could not remember but eventually she indicated that it might be in her car. Defendant left and returned with her purse. After dumping the contents on the bed he stated, "You really don't have any money do you." The police eventually recovered the victim's purse and at that time it was determined her driver's license and Master Charge card were missing.

The second count of armed robbery was based upon money which was taken from the victim's person. In this regard the complaining witness testified that defendant began to search the clothes she was wearing. At this point she told him she had some cash in the pocket of her bluejeans and defendant took approximately $60 in cash out of the pocket.

These facts demonstrate that the cash which was taken from a pocket in the victim's clothing, from her person, did not take place at the same time and place as the taking of the driver's license and Master Charge card.

This is also not an instance "where more than one offense is carved from the same physical act" (66 Ill. 2d 551, 566).

We therefore reaffirm our holding that the trial court properly entered concurrent sentences for both counts of armed robbery.

BOYLE and NASH, JJ., concur.