THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FELIX ROSA, Defendant-Appellant.

Second District   No. 81—334

Opinion filed December 30, 1982.

UNVERZAGT, J., dissenting.

Michael E. Deutsch and Jan Susler, both of Chicago, for appellant.

Fred Foreman, State's Attorney, of Waukegan (Phyllis J. Perko, Nancy S. Hudell, and Martin P. Moltz, all of State's Attorneys Appellate Service

386

Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury, defendant, Felix Rosa, was convicted of two offenses of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and sentenced to concurrent 22-year terms of imprisonment. He appeals contending that the trial court erred in (1) denying his motions to quash the jury panel and dismiss the indictment; (2) convicting him for two offenses of armed robbery on the basis of a single physical act; and (3) imposing excessive sentences.

A review of the record on appeal reveals that on December 10, 1980, at approximately 5:50 p.m. Luis Rosado (a codefendant who is not a party to this appeal) walked into the Highland Park Ford dealership and informed one of its salesmen, William Caminiti, that he was considering the purchase of a van. Caminiti identified two vans (stock numbers T-114 and T-132) in which Rosado might be interested through the dealership stock index file. Caminiti obtained the keys to these vans and accompanied Rosado to the parking lot where the vehicles were located approximately 40 feet from one another.

Caminiti first directed Rosado to Van No. T-132 and allowed him to enter and examine it. While Rosado was so occupied, the defendant, Rosa, approached and also inquired of Caminiti about the purchase of a van. Caminiti advised Rosa he would be with him in a moment, and Rosa departed. Caminiti then showed Rosado Van No. T-114 and, after running its engine, the two men returned to the first van and also tested its engine. As they then walked back to the showroom, Rosado informed Caminiti that he wished to purchase the second van, T-114; they returned to it and Rosado started the engine. While Caminiti was explaining the features of the vehicle to Rosado, defendant Rosa ran up behind Caminiti holding something in his hand. Caminiti knocked Rosa's hand away from him whereupon Rosa pointed a pistol at Caminiti saying, "You almost got fucking blown away man" and put his right arm around Caminiti's neck. Caminiti was told to shut up and was forced to walk between the two men back to the first van, T-132, where he was told to lie face down in the back of the van and shut up or he would be "blown away." Rosa gave the pistol to Rosado and tied Caminiti's hands behind his back, and Rosado then hit Caminiti on the side of the head with the pistol.

Rosa went through Caminiti's pockets and took his wallet, watch and $50 in cash. He told Caminiti "you cheated us" and warned him not to move for five minutes or he'd be blown away; both defendants then left the van. Caminiti waited a few minutes then exited the van

and ran back to the showroom where he was untied, and discovered that van T-114 was missing. The police were notified and a description of the missing van was broadcast over the police radio. Subsequently, the van and the two defendants were stopped on the Peterson Street exit of the Edens Expressway after a high-speed chase on the expressway involving multiple State and municipal police officers.

On December 17, 1980, defendant Rosa was charged by indictment with two counts of armed robbery, two counts of armed violence and one count each of kidnaping, aggravated kidnaping, aggravated battery, theft (under $150) and theft (over $150) in violation of sections 18—2(a), 33A—2, 10—1(a)(1), 10—2(a)(5), 12—4(b)(1) and 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(a), 33A—2, 10—1(a)(1), 10—2(a)(5), 12—4(b)(1) and 16—1(a)). Prior to trial defendant filed motions to quash the jury panel and the indictment alleging generally that the system used to select the panel and petit jurors was discriminatory and resulted in a nonrepresentative panel. The motion contained no specific allegations of discrimination, nonrepresentation or prejudice nor was it supported by affidavit. At the hearing of the motion defendant offered no evidence in its support. On that basis, the motion was denied by the trial court.

After trial, the court directed verdicts for defendant on the counts for kidnaping and aggravated kidnaping and the jury returned verdicts of guilty on the remaining seven counts. The court subsequently denied defendant's motion for a new trial but, at the sentencing hearing, vacated all of the judgments against defendant except for the two offenses of armed robbery for which he was sentenced. Defendant did not file a motion to reduce or modify the sentences within 30 days of its imposition as is allowed by section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(c)).

Defendant initially contends that the trial court erred in denying his motion to quash the jury panel and indictment, urged on the grounds that the system used in Lake County to select and impanel grand and petit jurors discriminated against minorities and classes of persons resulting in underrepresentation of those groups on the juries ultimately impaneled to defendant's prejudice.

■ It has long been recognized that the systematic exclusion of members of identifiable groups from grand or petit jury service, solely because of their membership in those groups, denies a defendant who is a member of such a group the equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution. (*Castaneda v. Partida* (1977), 430 U.S. 482, 51 L. Ed. 2d 498, 97 S. Ct. 1272; *Alexander v. Louisiana* (1972), 405 U.S. 625, 31 L. Ed.

2d 536, 92 S. Ct. 1221; *Whitus v. Georgia* (1967), 385 U.S. 545, 17 L. Ed. 2d 599, 87 S. Ct. 643; *Hernandez v. Texas* (1954), 347 U.S. 475, 98 L. Ed. 866, 74 S. Ct. 667; *Carter v. Texas* (1900), 177 U.S. 442, 44 L. Ed. 839, 20 S. Ct. 687.) The burden of proving selective discrimination against an identifiable group is upon the defendant. (*Whitus v. Georgia* (1967), 385 U.S. 545, 550, 17 L. Ed. 2d 599, 603-04, 87 S. Ct. 643, 646; *Hernandez v. Texas* (1954), 347 U.S. 475, 480, 98 L. Ed. 866, 871, 74 S. Ct. 667, 671; *People v. Powell* (1973), 53 Ill. 2d 465, 477-78, 292 N.E.2d 409, 416-17; *People v. Blair* (1974), 17 Ill. App. 3d 325, 336, 307 N.E.2d 679, 687, *appeal denied* (1974), 56 Ill. 2d 583.) Once a *prima facie* case of discrimination has been established the burden shifts to the prosecution to rebut the presumption of unconstitutional action by showing that permissible racially neutral criteria and procedures were employed. (*Alexander v. Louisiana* (1972), 405 U.S. 625, 631-32, 31 L. Ed. 2d 536, 542, 92 S. Ct. 1221, 1226; *Whitus v. Georgia* (1967), 385 U.S. 545, 550, 17 L. Ed. 2d 599, 603-04, 87 S. Ct. 643, 646.) There are two methods by which a *prima facie* case may be established by the defendant: (1) showing that the statutory jury selection procedure is racially nonneutral, or susceptible to abuse, on its face (*Alexander v. Louisiana* (1972), 405 U.S. 625, 31 L. Ed. 2d 536, 92 S. Ct. 1221; *Whitus v. Georgia* (1967), 385 U.S. 545, 17 L. Ed. 2d 599, 87 S. Ct. 643); or (2) the "rule of exclusion" which requires a showing that, over time, an identifiable group has been substantially underrepresented in jury service in comparison with their proportionate presence in the total population of the community. *Castaneda v. Partida* (1977), 430 U.S. 482, 51 L. Ed. 2d 498, 97 S. Ct. 1272; *Hernandez v. Texas* (1954), 347 U.S. 475, 98 L. Ed. 866, 74 S. Ct. 667.

■ In Illinois, the procedures by which a jury panel may be challenged are provided in section 114—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—3):

"(a) Any objection to the manner in which a jury panel has been selected or drawn shall be raised by a motion to discharge the jury panel prior to the voir dire examination. For good cause shown the court may entertain the motion after the voir dire has begun but such motion shall not be heard after a jury has been sworn to hear the cause.

(b) *The motion shall be in writing supported by affidavit and shall state facts which show that the jury panel was improperly selected or drawn.*

(c) If the motion states facts which show that the jury panel has been improperly selected or drawn it shall be the duty of

the court to conduct a hearing. *The burden of proving that the jury panel was improperly selected or drawn shall be upon the movant.*

(d) If the court finds that the jury panel was improperly selected or drawn the court shall order the jury panel discharged and the selection or drawing of a new panel in the manner provided by law." (Emphasis added.)

Failure of the motion to conform to the requirements of this section will preclude defendant's right to a factual hearing and the motion will be properly denied. *People v. Perry* (1980), 81 Ill. App. 3d 422, 427-28, 401 N.E.2d 1263, 1268, *cert. denied* (1981), 451 U.S. 983, 68 L. Ed. 2d 839, 101 S. Ct. 2313; *People v. Hughes* (1977), 46 Ill. App. 3d 490, 500-01, 360 N.E.2d 1363, 1370.

When measured by these standards, it is clear that defendant's motions were insufficient and were correctly denied by the trial court. They were not supported by affidavit and wholly failed to set forth any factual allegations of nonneutrality or substantial underrepresentation of any identifiable class of persons. Rather, the motions set forth only general conclusions of discrimination and prejudice. Moreover, at the hearing on the motions, defendant did not seek to remedy these defects through testimony or other evidence in support of his motion.

■ Defendant argues, however, that the trial court erroneously denied his request for an order of production requiring the Lake County Jury Commission to make its records available to him for inspection to determine the procedures followed by it and the representation of persons it excused from jury service. Defendant's counsel advised the court he had spoken preliminarily to one of the commissioners who had responded to his inquiries. Counsel did not suggest in the trial court, nor does he do so here, that any request for records made by him of these officials was refused. The trial court noted defendant's request for a production order was made at the hearing of defendant's motions to quash the jury panel, but that no evidence was offered in support of the motions.

The records from which defendant would seek information in support of his motions are public records accessible to him. (Ill. Rev. Stat. 1979, ch. 116, par. 1 *et seq.*; *People ex rel. Gibson v. Peller* (1962), 34 Ill. App. 2d 372, 374, 181 N.E.2d 376, 378.) He could also call as witnesses the jury commissioners and cause the production of any records to which he has been denied access. It is not the duty of the court to provide to defendant readily available records to which he has access. We conclude the trial court did not abuse its discretion in

denying defendant's request for a production order and also correctly denied the motions to quash the jury panel and dismiss the indictment.

Defendant next contends he was improperly convicted and sentenced for two offenses of armed robbery in that the thefts of the van and the personal property of Caminiti were based upn a single physical act thus incapable of supporting multiple charges. Defendant requests that his conviction and sentence for armed robbery predicated upon the theft of the van be vacated.

■■ Initially, we note that the theft of the van, although accomplished after the victim was tied up and placed in the back of another van, is a proper basis for a charge of armed robbery. Armed robbery is the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a deadly weapon. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2, 18—1.) Property has been considered to be taken from the person or presence of a victim even though the robber first locks the victim in another room before taking property from the room where the victim was first encountered. (*People v. Braverman* (1930), 340 Ill. 525, 530-31, 173 N.E. 55, 57; *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 726, 420 N.E.2d 640, 644.) The test for "presence" in such a case is whether the victim's proximity or control over the property was so close that he could have prevented the taking if he had not been subjected to force or the threat of force by the robber. (*People v. Braverman; People v. Carpenter*; W. LaFave and A. Scott, Criminal Law sec. 94, at 696 (1972).) It is apparent that Caminiti was in such proximity to the stolen van that he could have prevented its taking had he not been subject to the force imposed and threats by defendant. Thus, the theft of the van was a proper basis for one offense of armed robbery; the second offense charged was premised upon the taking of Caminiti's wallet and watch from his person.

■■ However, if the taking of the personal property from Caminiti's person and the taking of the van are deemed to be a single physical act, multiple convictions for armed robbery would be improper. More than one offense cannot be carved from the same physical act. (*People v. Dixon* (1982), 91 Ill. 2d 346, 355, 438 N.E.2d 180, 185; *People v. Donaldson* (1982), 91 Ill. 2d 164, 168, 435 N.E.2d 477, 479; *People v. Myers* (1981), 85 Ill. 2d 281, 288, 426 N.E.2d 535, 538; *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) An "act" has been defined as "any overt or outward manifestation which will support a different offense." (*People v. Dixon* (1982), 91 Ill. 2d

346, 355, 438 N.E.2d 180, 185; *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) If there in fact are multiple acts, their interrelationship does not preclude multiple convictions and the imposition of concurrent sentences for separate offenses which are not by definition lesser included offenses. *People v. Dixon* (1982), 91 Ill. 2d 346, 355, 438 N.E.2d 180, 185; *People v. Myers* (1981), 85 Ill. 2d 281, 288, 426 N.E.2d 535, 538.

■ We conclude that the theft of the wallet, watch and cash from the person of the victim and the subsequent taking of the van from the presence of the victim were separate overt and outward physical manifestations sufficiently separated by time and distance to support both convictions for armed robbery. That conclusion was also reached by this court in a strikingly similar case. (*People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516, *appeal denied* (1978), 71 Ill. 2d 613.) In *Moore*, the defendant was convicted of two armed robberies; one was predicated upon the theft of cash from the clothing of the victim while she was tied up in her bedroom and the other upon the theft of a driver's license and charge card from her purse in another room. We determined that conduct demonstrated separate acts justifying multiple convictions.

Defendant relies largely upon our opinion in *People v. Velleff* (1981), 94 Ill. App. 3d 820, 419 N.E.2d 89, where it was held that only one offense of armed robbery could be predicated upon the almost simultaneous taking of a wallet from a victim and the contents from a safe. However, we there distinguished our holding in *Moore* noting that it was based upon robberies which were separated by time and distance. We conclude defendant was properly convicted and sentenced for both armed robberies in this case.

Defendant also contends that the imposition of concurrent 22-year sentences for armed robbery was excessive and should be reduced.

Although reviewing courts are authorized to reduce sentences by Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), the determination and imposition of sentence is principally within the trial court's discretion and will be altered only where its sentencing discretion has been abused. (*People v. LaPointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) gives wide discretion to the sentencing judge in order to permit reasoned judgments as to penalties which are appropriate to the particular circumstances shown by the evidence in each case. The trial judge must fashion a sentence which

balances both the need to protect society and to rehabilitate the offender (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49), and he is in the best position to make those evaluations and determine the proper sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883.) A reviewing court does not serve as a sentencing court, and we will not substitute our judgment for that of the trial court solely because we might have balanced the appropriate factors differently if the task of sentencing had been ours. *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547.

With these standards in mind we consider whether the sentences were excessive and should be reduced.

Defendant contends the terms imposed are not proportionate to the seriousness of the offenses and also consistent with the objective of restoring defendant to useful citizenship as mandated by section 11 of article I of the Illinois Constitution. (Ill. Const. 1970, art. I, sec. 11.) He argues that the courts purpose in imposing these severe sentences was to exact retribution in this case because of the general problem in our society of crimes of violence in which weapons are employed. Defendant also suggests that because the trial court was made aware during pretrial proceedings of rumors linking defendant to a Puerto Rican organization accused of terrorist activities, the judge became prejudiced resulting in excessive sentences.

The presentence report and other evidence at the sentencing hearing disclosed that defendant was 21 years of age at the time of the offenses. He was married and supported his wife and their child and also her two children by a former marriage. Defendant was employed by the Chicago Youth Center as a counselor earning $7,000 per year. He had completed high school and one year of college. Defendant had no prior felony convictions, but had been convicted of criminal trespass to a vehicle in 1976; possession of marijuana in 1977 and battery in 1979. He successfully completed the sentences of probation imposed in each of those cases. No other evidence of juvenile or adult criminal activity by defendant was introduced at the sentencing hearing.

Before imposing sentence the trial court specified the matters upon which that determination was based noting defendant's close ties with his family, 13 years of education, his employment and generally laudable background. The judge commented he was not even considering the three misdemeanor offenses for which defendant was convicted. The court further stated,

> "In considering the sentence which I will impose upon you, I first take into my determination the legislative intent of a Class

X felony, which is to impose a mandatory sentence of not less than 6 years, but not more than 30 years.

Secondly, I also take into consideration the fact that society is sick and tired of crimes of violence where a dangerous weapon is employed. And society is screaming to the courts to do something to stop this problem, which is a growing menace in America.

Third, I have to consider the evidence that is presented in this courtroom, the demeanor of witness Caminiti, the fact that you did have an attache case while dressed in typical street clothes which would deceive an individual that you had a weapon in your possession, that you did have a loaded gun, that you did bind by rope witness Caminiti, and it wasn't bad enough that you bound him, but you engaged in taking the trivia of a few dollars, his wallet, his watch and other personal property that he had.

Then you participated in taking a van, which is the subject matter of the theft over $150. Then you drove the van in an eastbound direction during the end of heavy traffic, endangering lives of many individuals, pursued by multiple squad cars who had warning lights with their Mars lights.

Without going into the description which was apparently presented during the course of this trial, wherein you endangered the drivers upon the speedway, Route 41, and that finally you turned off and were stopped and arrested some time through the chase. Sometimes the chase went as high as 70 miles an hour.

The Court takes all of this into consideration. The Court also takes into consideration the fact that we commenced a jury trial and afforded you your complete rights as provided by statute, and as interpreted by the Supreme Court and as governed by the constitution of this state, the Constitution of the United States, but that following the testimony of witness Caminiti, you chose on the second day thereof to voluntarily not appear, with the result that the trial was continued and a warrant for your arrest was then issued, and that on the third day you were then arrested, which would be the day after the warrant for arrest was authorized. You were returned to this court and the trial continued. And thereafter for these numerous reasons, I am at this [time] [*sic*] ready to impose sentence upon you. Are there any questions, please?

MR. DEUTSCH [defense counsel]: Judge, the only thing I

would say is, of course, Mr. Rosa did voluntarily return to court. And that is a subject of the other motion we heard. I don't think the Court should—I think he saw the light and did decide to come back to court and to face the consequences of the case, and I think the Court should consider that as well. That is the other side of what the Court said.

THE COURT: That is a determination this Court nor any other individual will ever know."

Defendant notes that the record also discloses that on December 19, 1980, at a hearing to set bond of defendant and his codefendant, the assistant State's Attorney inquired of the codefendant in cross-examination whether he was a member of an organization known as the FALN, but objection to the question was sustained by the trial court. In that hearing the State also called as a witness a special agent of the F.B.I. who was a specialist in domestic terrorist activities; however, the trial court sustained objections to questions to the witness relating to the identity of the codefendant. The witness was not asked whether he had any knowledge of defendant Rosa's associations. Following the bond hearing, the State recommended it be set at $1,000,000; however, the court set defendant's bond at $300,000.

Later motions by defendant for continuance or change of place of trial considered by the trial court were supported by clippings from a local newspaper which stated defendant and his codefendant were suspected by authorities to have links to a Puerto Rican terrorist group. In denying the motions, the trial court noted that nothing had been shown to it that defendants were members of that organization.

The argument that the trial judge was prejudiced by suggestions or rumors defendant was associated with a terrorist organization is not convincing. The judge recognized that no evidence in that regard had been shown and we will not conclude, as urged by defendant, that the court weighed its sentencing determination by matters which were unproven.

■ It does appear, however, that the trial court gave little, if any, consideration to the evidence in the record of defendant's personal background and his potential for rehabilitation, as is required by both constitution and statute. Nor do we understand why the court declined to give any consideration to defendant's prior convictions for three misdemeanors. The court did expressly consider the fact that crimes in which dangerous weapons are employed are a growing menace; so too did the legislature when it provided that the sentence for armed robbery will be imposed on a scale of not less than 6 years nor more than 30 years.

On the record before us, we are unable to determine on what basis the trial court fixed the sentence at 22 years and conclude the court abused its discretion by not adequately balancing the seriousness of the offense with the rehabilitative potential of defendant. See *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906; *People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233, 243-44; *People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1, 4; *People v. Goodman* (1981), 98 Ill. App. 3d 743, 748-53, 424 N.E.2d 663; *People v. Goodwin* (1980), 83 Ill. App. 3d 203, 206-07, 403 N.E.2d 1051, 1054.

Accordingly, the judgment of the circuit court is affirmed except as to sentences; they are reduced to concurrent terms of 12 years' imprisonment in the Department of Corrections.

Judgment affirmed; sentences reduced.

LINDBERG, J., concurs.

JUSTICE UNVERZAGT, dissenting:

I concur with the majority with regard to the resolutions of the issues presented except for the sentencing issue. I dissent from the majority's reduction of sentence to concurrent terms of 12 years' imprisonment.

In my view, the sentencing issue has been waived by the defendant's failure to raise it in the trial court through a post-trial motion or a motion for reduction of sentence as permitted under section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(c)). It is well recognized in criminal cases that failure to raise objections in the trial court and preserve claimed error in a post-trial motion will preclude the raising of such issues on appeal. (*People v. Jackson* (1981), 84 Ill. 2d 350.) The purpose of this rule is to afford the trial court an opportunity to correct its errors, thus avoiding the delay and expense of unnecessary appeals. (84 Ill. 2d 350, 358-59.) The rule applies equally to alleged improprieties in sentencing procedures. *People v. Davis* (1982), 93 Ill. 2d 155; *People v. Taylor* (1980), 82 Ill. App. 3d 1075; *People v. Baseer* (1980), 90 Ill. App. 3d 866.

Even if the sentencing issue is not waived, which I believe it is, I would not reduce the sentence as the majority does. First, the sentence is not reviewable as "plain error" under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), and second, the trial judge did not abuse his sentencing discretion. *People v. La Pointe* (1981), 88 Ill. 2d 482; *People v. Cox* (1980), 82 Ill. 2d 268; *People v. Perruquet* (1977), 68 Ill.

2d 149, 154.

The defendant did have a prior criminal history of misdemeanors. The trial court chose to disregard these. However, the trial court in its summing up did take into account the fact that in fleeing, the defendant drove the van in heavy traffic at speeds up to 70 miles per hour while being pursued by police with Mars lights flashing, thus endangering the lives of many innocent drivers on Route 41. On balance, I do not believe the trial court abused its discretion in this matter and I would affirm the conviction and sentence of the circuit court of Lake County, Illinois.

I therefore dissent from the majority opinion.