THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL C. PALMER, Defendant-Appellant.
First District (1st Division) No. 1—86—2091

Opinion filed July 17, 1989.—Modified on denial of
rehearing October 10, 1989.

Michael J. Pelletier and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Catharine M. Forest, and Pradeep Roy-Singh, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, Darrell C. Palmer, appeals from convictions for aggravated criminal sexual assault and unlawful restraint and a sentence of 12 years' imprisonment. He maintains that: (1) the State failed to impeach his alibi defense and rebut the evidence he presented that he did not fit the description of the offender; (2) the admission of certain hearsay statements violated his right to due process and right to confrontation; (3) he was denied due process when the jury was not instructed on the lesser-included offense of criminal sexual assault; (4) he was denied effective assistance of counsel; and (5) his sentence was improperly based on the judge's predisposition to severely sentence sex offenders. For the reasons that follow, we affirm the decision of the trial court.

The complainant testified at trial to the events that occurred on September 25, 1984. She was 12 years old at the time, lived at 72nd and Halsted and attended Walter Reed Elementary School located at 64th and Stewart. On the morning of September 25, she overslept and missed her 8:30 a.m. bus. She got up at approximately 9 a.m., took 20 minutes to dress and left for school, carrying her math and spelling books. She walked down Halsted Street to 64th, turned east on 64th and went under a viaduct to the north side of the street, the side on which her school was located.

As she walked under the viaduct, a young man ran up behind her

on the right side, pressed something against her side and told her that it was a gun. He told her not to move or he would kill her. The object in question was black and brown, and the brown portion appeared to be made of wood. The assailant took her across the street to some bushes by the railroad tracks. When they reached the bushes, he laid her down, pulled up her skirt and pulled down her underpants. He then unzipped his pants and pulled out his penis. She could see at this time that he was wearing maroon underwear.

During this time, the complainant was crying and yelling. The assailant told her to be quiet, and then he put his penis in her mouth while she was lying down. He then took his penis out of her mouth and lay on top of her. He tried to insert his penis in her vagina but was unable to do so because she was moving around too much. The complainant told him that the penis hurt her, but he told her to be still or he would kill her and placed his hand over her mouth. The assailant then got up, pulled up his pants and zipped them.

The complainant testified that he went to see if anyone was coming and then came back for her. He offered the complainant $10 not to tell anyone what had happened, but she turned down the money. They were walking toward the school when he told her that he knew where she lived and would kill her if she told her mother or the police about the incident. The assailant told her that he had raped her because his girlfriend had been raped. When they reached an alley, the defendant ran into the alley and the complainant ran to school.

Upon her arrival at school, the complainant met her teacher in the hallway and told her that she had been raped. The assistant principal and the police were notified, and the complainant was taken to St. Bernard Hospital for examination.

The complainant testified that she had an opportunity to see the assailant. She stated that he was wearing a maroon and gold CVS jacket, gray pants, a black and gray shirt and gray shoes. He had long curly hair with gold streaks in it, had eyes that were "scrunched together" and pierced ears. She described her assailant as being 5 feet 9 inches tall, weighing 130 or 180 pounds, and appearing to be 17 or 18 years old.

Detective John McCann testified that he interviewed the complainant at the hospital. The description she gave of the assailant was similar to the one she had given to the police at the school. After she was released from the hospital, Detective McCann took the complainant back to the scene of the incident. They then went to CVS High School on 87th Street and Jeffrey Boulevard because they thought the offender may have been a student there. They chose the school be-

cause of the letters on the jacket, but learned that maroon and gold were not the school colors. The complainant was shown yearbook pictures and police photographs but did not recognize any of them as her assailant.

Detective McCann then gave a description of the assailant to the school officer at Englewood High School, which is a block and a half from Reed Elementary School and is the school a person in the area would attend. He also went to the apartment building at 6425 South Lowe, since the complainant had told him that the assailant had fled west and then south behind Lowe. The apartment complex has about 160 units and is located approximately a block and a half from the scene of the incident. Detective McCann gave a description of the assailant to the security guard and was informed that a person fitting that description had been in the building.

The complainant's mother testified that on November 22, 1984, the complainant and some of her cousins went to the Jewel food store at 62nd and Halsted. Upon returning home the complainant told her mother that she had seen the man who had attacked her at the store. The complainant's mother grabbed a knife and went to Jewel. Upon arriving there, the complainant pointed out the defendant to her mother, and the complainant's mother confronted him as he was leaving the store. The complainant's mother testified that prior to being accused of anything or even asked a question the defendant denied that he had done anything, remarking, "[Y]ou got the wrong person, you got the wrong person," and "[L]ady, she is mistaken [sic] identity." However, the complainant insisted that he was the assailant. The complainant's mother flagged down a patrol car, and the officers arrested the defendant.

Officer Bernard Scott testified that on November 22, 1984, he was assigned to work at the Englewood Shopping Concourse. At approximately 1:45 p.m. he was flagged down by a woman and a child in front of a Jewel food store. The woman informed him that her daughter had been the victim of a sexual attack and identified the defendant as the assailant. Officer Scott placed the defendant in a squad car and read the defendant his *Miranda* rights. The defendant indicated that he understood his rights.

The defendant was then transported to the 7th District, where he was taken to the tactical office. Officer Scott overheard Officer Woullard having a conversation with the defendant. Officer Woullard was explaining the facts of the case to the defendant, and Officer Scott observed the defendant showing Officer Woullard the purple underwear he was wearing.

Officer Scott testified that later that day he had a telephone conversation with Yolanda Evans, the defendant's girlfriend, during which they discussed a maroon and gold jacket. Yolanda told him that the defendant had such a jacket, that she had seen it earlier that morning and indicated that the police could come over and get it. However, when Officers Scott and Woullard searched her apartment, they did not find the jacket.

Detective William Kelly testified that on November 22, 1984, he was assigned to follow-up investigation of an aggravated criminal sexual assault on the complainant. He and his partner, Detective Foley, spoke with the defendant in an interview room. Detective Kelly read the defendant his *Miranda* warnings and the defendant indicated that he was willing to answer their questions. The defendant told them that he did not own a maroon and gold CVS jacket. He stated that on the date of the incident he was working at the Holiday Inn and that Yolanda Evans could verify that fact. However, when Detective Kelly contacted Yolanda to verify the alibi, she informed him that the defendant was not working at the Holiday Inn on that day because he had been laid off. She further stated that she had seen the defendant wearing the jacket in question.

At about 3:30 p.m. Detective Kelly again spoke to the defendant in the presence of Assistant State's Attorney Susan Fleming. They advised the defendant of his rights, and he indicated a willingness to speak to them. Detective Kelly informed him that his girlfriend did not verify that he was working at the Holiday Inn at the time of the incident, at which time the defendant admitted to grabbing a small girl. He stated that he had taken her in an area with bushes where he raised her dress and pulled down her panties. He took out his penis and attempted to have intercourse with her but did not complete the act. He then walked with the girl and told her not to tell anyone. The defendant said that the gold and maroon jacket he had been wearing belonged to a friend.

Yolanda Evans, the defendant's girlfriend, testified that she had known the defendant for eight years and had lived with him for four years. She stated that she had discussed a maroon and gold CVS jacket with the police, and that two police officers had asked her permission to look for it but she did not testify to the substance of the conversation. She denied that the police had asked her if the defendant worked at the Holiday Inn on the date of the incident. Ms. Evans acknowledged that she had been sexually assaulted in May of 1983 and had discussed the incident with the defendant.

Assistant State's Attorney Susan Fleming testified that at 3:30

p.m. she had spoken with the defendant in the interview room in the presence of Detective Kelly. She told the defendant that the complainant had identified him as the individual who had sexually assaulted her by some railroad tracks. The defendant said he did not know anything about the incident and that he had been with his girlfriend at the time. Fleming informed him that Yolanda had told Detective Kelly that the defendant was not with her, at which point he admitted that he had followed a little girl and had taken her to an area by some railroad tracks where he pulled down her clothes. The girl struggled and yelled for her mother and he took out his penis in an attempt to scare her, but did not rape her. The defendant's statement was transcribed, but he refused to sign it.

Katrina Chambers testified on behalf of the defense. She stated that on September 25, 1984, she telephoned the defendant at 8:55 a.m. and spoke to him for approximately 25 minutes. She lived in the same apartment building as the defendant and on that date he had visited her apartment at about 9:30 or 9:45 a.m.

Jerome Roberson, a friend of the defendant's, testified that he had known the defendant for four years and that he had seen the defendant on the morning of September 25, 1984, since he had spent the night at his house. He maintained that on that date the defendant did not have streaks in his hair and that the first time he noticed the streaks was the week before Halloween.

Yolanda Evans was also called on behalf of the defense and testified that the defendant did not have streaks in his hair on September 25, 1984.

The defendant took the stand on his own behalf. He testified that he was 5 feet 8 or 9 inches tall, weighed 125 pounds and had had pierced ears approximately five years. On the morning of September 25, 1984, Katrina Chambers called him at approximately 9 a.m. After speaking with her, he washed up, dressed and went to her apartment, arriving between 9:30 and 9:45 a.m. He testified that he did not see the complainant on that day.

On this evidence, the defendant was found guilty of unlawful restraint and aggravated criminal sexual assault and sentenced to 12 years in the Illinois Department of Corrections.

On appeal, he contends that the State did not prove his guilt beyond a reasonable doubt since his alibi was unrebutted. He further contends that the State failed to establish that he matched the description of the attacker.

■ Where the identification of the accused is at issue, the trier of fact is not required to accept the defendant's alibi testimony over the

positive identification by the victim, and the testimony of a single witness, if positive and credible, is sufficient for a conviction even in the presence of contradictory alibi testimony. (*People v. Thomas* (1986), 145 Ill. App. 3d 1, 7-8, 495 N.E.2d 639.) The test of a positive identification is whether the witness had an opportunity to view the offender for a sufficient length of time under conditions adequate for observation. (*People v. Gholston* (1984), 124 Ill. App. 3d 873, 892, 464 N.E.2d 1179.) These conditions need not be perfect and the observation does not have to be prolonged. *People v. Williams* (1986), 143 Ill. App. 3d 658, 662, 493 N.E.2d 362.

█ In the present case, the 12-year-old victim had ample opportunity to view her assailant. The incident occurred during daylight hours when the victim walked to the elementary school she attended, which was located at 64th and Stewart. The defendant then accosted her from behind and pressed what the complainant described as a black and brown object to her side. He identified the object as a gun and then walked beside her and forced her into some bushes. There, he made her lie on the ground, raise her skirt and lower her underpants. He thereafter sexually assaulted her while she struggled against him.

When he finished, he offered her $10 which she refused. While they walked toward the school, he told her he knew where she lived and threatened to kill her if she reported him to the police or her mother. He claimed that he had raped her because his girlfriend had been raped. When they reached an alley, he fled and she ran to school.

The complainant was able to view defendant prior to, during, and after the incident. She described him as being 5 feet 9 inches tall and weighing 130 to 180 pounds. She further stated that he appeared to be 17 to 18 years old and that he wore a maroon and gold jacket, gray pants and shoes and a black and gray shirt. He had long, curly, gold-streaked hair. His eyes were "scrunched together" and he wore earrings in his pierced ears. Although the evidence presented by the State regarding defendant's weight and when he had added the gold streaks to his hair conflicted with that of the defense, the conflict merely affected the weight of the evidence.

Further, it can reasonably be argued that the defendant's unsolicited declaration of innocence to the complainant's mother when initially approached by her showed an element of guilt. Additionally, he admitted that he had assaulted the complainant to law enforcement officials when they advised him that his girlfriend refused to provide him with an alibi. Although alibi witnesses testified in defendant's be-

half, the jury was not required to accept their testimony as true. The testimony of one of defendant's alibi witnesses revealed that he was not with defendant at the time of the incident and thus could not provide an alibi. The account provided by the other witness was riddled with conflicts.

■ Defendant also asserts that the trial court admitted certain hearsay testimony which violated his rights to due process and confrontation. When a defendant fails to object to the admission of alleged hearsay testimony during trial proceedings or raise it in a written post-trial motion, he waives it as an issue for purposes of review on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) An exception to this rule is the plain error doctrine, which may be applied if the evidence is so close that there is a possibility that an innocent man may have been convicted due to an error which is obvious from the record, or the alleged error deprived the accused of substantial means of enjoying a fair and impartial trial. The court considers such errors even though they have not been properly preserved. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) The plain error doctrine is applicable only when the record clearly reflects that an error affecting substantive rights was committed. (*People v. Coles* (1979), 74 Ill. 2d 393, 397, 385 N.E.2d 694.) After our review of the facts herein, we cannot conclude that the evidence was so close that the plain error rule should be applied.

■ Nevertheless, we observe that hearsay evidence is testimony in court of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. (*People v. Lopez* (1987), 152 Ill. App. 3d 667, 672, 504 N.E.2d 862.) Out-of-court statements used other than for purposes of establishing the truth of the matter asserted do not rest for their value on the credibility of the out-of-court declarant and are generally admissible. *People v. Camp* (1984), 128 Ill. App. 3d 223, 229, 470 N.E.2d 540.

In the instant matter, defendant argues that the following statements were inadmissible hearsay: (1) testimony by Detective McCann regarding the victim's description of the offender and his conduct after and during the assault; (2) Detective McCann's conversation with a security guard at 6425 South Lowe; (3) Officer Bernard Scott's testimony regarding Yolanda Evans' statement about defendant's ownership of a jacket allegedly worn by the assailant; (4) Detective William Kelly's testimony regarding Evans' statement as to defendant's place of employment; and (5) Assistant State's Attorney Fleming's testi-

mony regarding Evans' denial that she was with defendant at the time of the offense.

■ After reviewing each of the allegedly inadmissible statements, we find that defendant's contentions are without merit.

The testimony of Detective McCann regarding the complainant's description of her offender was, in effect, either a statement of identification, or a statement of present sense impression in which the complainant described the conditions immediately after the incident. Our supreme court in *People v. Rogers* (1980), 81 Ill. 2d 571, held that evidence of an out-of-court identification by a witness could be used in corroboration of an in-court identification. Accord *People v. Shum* (1987), 117 Ill. 2d 317, *cert. denied* (1988), 484 U.S. 1079, 98 L. Ed. 2d 1022, 108 S. Ct. 1060. See also Fed. R. Evid. 803(1).

In the instant case, both Detective McCann and the complainant testified at trial, and the complainant made an in-court identification of the defendant, in addition to her previous identification of him at the Jewel store. Therefore, we find that the testimony by Detective McCann regarding the complainant's out-of-court description of her offender was properly admitted in corroboration of her in-court identification, where the complainant had made a positive out-of-court identification and where both the complainant and Detective McCann were subject to cross-examination.

Further, we conclude that Detective McCann's testimony of his conversation with the complainant regarding the conduct of the offender was admissible. Detective McCann testified that the complainant had related to him that the offender fled in the direction of a building at 6425 South Lowe. Based on this information, Detective McCann proceeded to that building and spoke with the security guards, giving them a description of the offender and inquiring if they had seen a person in the building fitting that description.

Under Illinois law, testimony of an out-of-court statement offered for the limited purpose of explaining the reason and manner in which the police conducted their investigation is not hearsay testimony. (*People v. Stewart* (1984), 105 Ill. 2d 22, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666.) In the case at bar, Detective McCann testified that he was involved in the investigation from the start. He first interviewed the complainant at the hospital, and at that time, she related her offender fled on foot, away from a secluded area, in the direction of a particular building. Further, Detective McCann testified regarding the security guard's statement that someone who matched the description of the offender entered the building pointed out by the complainant. Hence, we find that this testimony

served the limited purpose of explaining the reason the police conducted their investigation as they did and was admissible as an exception to the hearsay prohibition. *People v. Gully* (1986), 151 Ill. App. 3d 795, 799, 502 N.E.2d 1091.

We have reviewed the complained-of testimony of Officer Scott and Detective Kelly. Each of the policemen testified to out-of-court statements allegedly made to them by Yolanda, the defendant's girlfriend, regarding the defendant's ownership of a jacket and place of employment, respectively. Yolanda was available as a witness, and in fact testified for both the State and the defense. In addition, the complainant and other witnesses testified to the same matters. Therefore, we believe that the testimony of the officers was merely cumulative of other evidence. We conclude that where persons, such as here, make out-of-court statements, which were offered in police testimony, also testify at trial, and with the exception of the complainant, are witnesses for the defendant, their statements are properly admitted, but even if improperly admitted, do not constitute reversible error. (See *People v. Bonds* (1980), 87 Ill. App. 3d 805, 410 N.E.2d 228.) We reach this decision in view of the entire record, the declarants' presence at trial, their availability for examination, and the overwhelming evidence of defendant's guilt in a prosecution for aggravated criminal sexual assault upon a child.

The last instance which the defendant contends is inadmissible hearsay concerns the testimony of Assistant State's Attorney Fleming relating an investigatory conversation she had with the defendant where she informed him that Yolanda had denied he was with her at the time of the offense.

In *People v. Sexton* (1987), 162 Ill. App. 3d 601, 51 N.E.2d 1359, this court found that the admission at trial of an out-of-court statement made by the assistant State's Attorney during a preliminary interview did not constitute reversible error. In this case, after his arrest, the defendant was held in a room and interviewed by detectives from the police department and Ms. Fleming from the State's Attorney's office. Ms. Fleming testified that she informed the defendant of the nature of her duties, which included conducting an investigation to determine whether he should be charged with a crime. Once the defendant agreed to speak to her, Ms. Fleming questioned him about his involvement with the complainant. Ms. Fleming stated that the defendant denied any assault on the complainant and "mentioned an alibi with his girlfriend, Yolanda." It was following these remarks that Ms. Fleming informed the defendant that the police had spoken with Yolanda, who denied that the defendant was with her.

We find that the testimony of the assistant State's Attorney, under these circumstances, was no more than a recitation of the facts and occurrences surmised from her investigation of the assault. As such, admission into evidence of the assistant State's Attorney's out-of-court response to the defendant, questioning his alibi, after the claim of alibi was first put into issue by the defendant, was properly admitted at trial, where the out-of-court statement was made during the preliminary investigation of the offense and where the investigator was available as a witness at trial.

Thus, as we have indicated, there was no basis for excluding the aforementioned testimony where either the out-of-court declarants were available at trial and/or the out-of-court statements were offered for limited purposes, *i.e.*, to explain, the conduct utilized by law enforcement officers during their investigatory procedure. Further, the admission of any other statements which could be considered hearsay was at most harmless error.

Defendant next contends his conviction should be reversed on the grounds that the trial court committed reversible error when it did not instruct the jury on the lesser-included offense of criminal sexual assault. The State once again contends that this court is precluded from addressing this issue on the basis that the defendant has waived his right for review by failing to raise the issue in the trial below.

■ A review of the record clearly shows that the defendant failed to proffer an instruction or make an objection when the jury instructions were tendered in the trial court. Our Illinois Supreme Court has stated that failure to make a timely objection at trial to jury instructions will constitute a waiver of the issue on appeal. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180.) The record also shows that defendant failed to raise this issue in a post-trial motion. We agree with the State that an objection must be made during the trial and raised in a post-trial motion to preserve an issue for appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 186), and that failure to do so waives the issue upon review. (*People v. Enoch*, 122 Ill. 2d at 198.) While we recognize that this court will address questions such as those raised by the defendant under the plain error exception, we do not believe the invocation of that doctrine to be appropriate under the facts of the case at bar. Ordinarily we would conclude our analysis here. However, we feel compelled to review the defendant's assertion that another exception to the waiver rule, the review of certain constitutional issues (*Enoch*, 122 Ill. 2d at 190), is applicable to the instant case.

The defendant raises a question of due process and postulates that his rights were violated by the trial judge's failure to *sua sponte*

instruct the jury on the lesser-included offense of criminal sexual assault. Thus, it is due to the gravity of the defendant's assertions regarding a deprivation of his constitutional rights that we address the issue of jury instructions.

The defendant maintains he is entitled under due process to instructions for a lesser-included offense because there is evidence that would permit a jury to find him guilty of that offense. He contends that the facts in this case could have supported criminal sexual assault instructions as well as aggravated criminal sexual assault instructions (*Keeble v. United States* (1973), 412 U.S. 205, 36 L. Ed. 2d 844, 93 S. Ct. 1993; *People v. Coleman* (1987), 166 Ill. App. 3d 242, 520 N.E.2d 55); that based on the evidence presented, the jury could have convicted him of the lesser included offense (*People v. Creamer* (1986), 143 Ill. App. 3d 64, 492 N.E.2d 923), and that he was entitled to such instructions even if the evidence which supports the instructions was slight and even though the instructions may conflict with the theory of the case (*People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993).

■ We believe that the circumstances here involved are dissimilar to those cases cited by the defendant. The defendant cites to *Keeble v. United States* (1973), 412 U.S. 205, 213, 36 L. Ed. 2d 844, 850, 93 S. Ct. 1993, 1998, which reversed and remanded the defendant's convictions, stating that "the jury could rationally have convicted him of simple assault if that opinion had been presented." However, in the *Keeble* decision, the question of intent, an element of the offense charged, "was very much in dispute at trial" (*Keeble*, 412 U.S. at 213, 36 L. Ed. 2d at 850, 93 S. Ct. at 1998), and therefore mandated that the trial court offer an instruction on the elements of the offense. The defendant has misconstrued *Keeble* to stand for the proposition that a defendant is unequivocally entitled under due process to instructions for a lesser-included offense. In fact, the Supreme Court has explained *Keeble* and *Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382, in *Hopper v. Evans* (1982), 456 U.S. 605, 72 L. Ed. 2d 367, 102 S. Ct. 2049, and reaffirmed the principle that due process requires that an instruction on a lesser-included offense be given *only* when the evidence so warrants. *Hopper*, 456 U.S. at 611, 72 L. Ed. 2d at 373, 102 S. Ct. at 2053.

Similarly, in *People v. Coleman* (1987), 166 Ill. App. 3d 242, 520 N.E.2d 55, this court held that failure to instruct the jury on the State's burden to prove lack of consent, once the question of consent is raised by an accused, is grave error necessitating a new trial. (*Coleman*, 166 Ill. App. 3d at 248.) However, contrary to defendant's con-

tention in his brief, the *Coleman* court found no error in the trial court's refusal to instruct the jury on the lesser-included offense of criminal sexual assault and held *it is error* to instruct a jury where the evidence supports only the conclusion that the defendant, if guilty at all, is guilty of the crime charged. 166 Ill. App. 3d at 248. See also *People v. Lockett* (1980), 82 Ill. 2d 546, 551; *People v. Preston* (1930), 341 Ill. 407, 420, 173 N.E.2d 383.

First, we find that where no instruction on a lesser-included offense was offered by the defendant, the trial court did not have a duty to raise the issue *sua sponte.* Generally, it is the burden of the party who desires a specific instruction to present it to the court and request that it be given to the jury. (*People v. Britz* (1988), 123 Ill. 2d 446, 475.) The circumstances where the court may be required to *sua sponte* offer an instruction include "seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence and on the question of burden of proof." (*People v. Parks* (1976), 65 Ill. 2d 132, 137.) This case involves none of these issues.

Moreover, in the instant case, the defense was alibi and mistaken identity. The record reveals that several witnesses testified on behalf of the defendant that he was with them at the time of the alleged occurrence and that the description of the assailant did not describe him. The evidence submitted at trial, by the defendant, implied but one conclusion—that he was not guilty and the wrong person had been charged. Therefore, it is reasonable to assume that defense counsel intended to present the jury with only two alternatives, namely guilty of aggravated criminal sexual assault and unlawful restraint or not guilty. If the court had given such an instruction, it would have been at risk of interfering with the defense strategy and committing reversible error. *People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.

The defendant asked the jury to believe his alibi and to believe that someone else attacked and assaulted the complainant. Consequently, we find that the defendant's contention is meritless and he was not entitled under due process to an instruction on criminal sexual assault where his own evidence of alibi and mistaken identity negates the possibility that a lesser-included offense instruction might have been warranted. *Hopper v. Evans,* 456 U.S. at 612-13, 72 L. Ed. 2d at 373-74, 102 S. Ct. at 2053-54.

■ We now address defendant's contention that he was inadequately represented by counsel. In order to prove this claim, defendant must prove that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability

that, but for defense counsel's alleged errors, the outcome of the proceeding would have been different. *(People v. Albanese* (1984), 104 Ill. 2d 504, 525, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) There is a presumption that counsel's conduct falls within the range of reasonable professional assistance. *(People v. Jennings* (1986), 142 Ill. App. 3d 1014, 1029, 492 N.E.2d 600.) Defendant maintains that he was inadequately represented by counsel because his attorney failed to object to the hearsay statements and did not request the jury instruction previously discussed.

■ In the case at bar, as noted earlier, the evidence of defendant's guilt is overwhelming. In response to the defendant's assertion that counsel allowed permissible hearsay into evidence, we conclude that an examination of the record, taken as a whole, establishes that defense counsel made timely objections throughout the trial to preclude inadmissible testimony. Additionally, as noted above, many of the isolated incidents defendant complains of were not hearsay. Furthermore, counsel is not required to make losing motions or objections in order to provide effective legal assistance *(People v. Lewis* (1981), 88 Ill. 2d 129); and counsel's performance evaluated from the whole record establishes that defendant received competent representation throughout trial *(People v. Glass* (1984), 128 Ill. App. 3d 869, 471 N.E.2d 597).

The second instance of defendant's complaint, *i.e.*, that counsel failed to tender instructions on the lesser-included offense, is likewise meritless. The decision whether to offer an instruction on a lesser-included offense is one of strategy which has no bearing on the competency of counsel. Defense counsel may have determined the defense of alibi and mistaken identity would gain the defendant an acquittal. (See *People v. Webster* (1988), 175 Ill. App. 3d 119, 128, 529 N.E.2d 727.) We will not reverse the trial court by now second-guessing defense counsel's tactics. See *People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936.

We conclude that defendant has failed to overcome the presumption that counsel's alleged errors were not trial strategy and has also failed to demonstrate that the result of his trial would have been different. *Webster*, 175 Ill. App. 3d at 128, citing *People v. Albanese* (1984), 104 Ill. 2d 504.

Defendant's final contention is that his sentence was improperly based on the judge's predisposition to severely sentence sex offenders.

To support his contention, defendant maintains that the trial court improperly: (1) considered the fact that he had been convicted of a

sexual offense as an aggravating factor, and (2) refused to consider imposing the minimum sentence even though there are strong mitigating factors in his favor. The defendant cites to *People v. Zemke* (1987), 159 Ill. App. 3d 624, 512 N.E.2d 374, where the Second District of the Appellate Court remanded the case for resentencing after finding that the sentence imposed by the trial court resulted from the fact that the defendant was a sex offender, a member of a class of offenders disfavored by the trial judge.

■■■ The sentence imposed by the trial court will be upheld on review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153-54, 368 N.E.2d 882.) It is well established that the trial court is afforded considerable discretion in its determination and imposition of a proper sentence. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Similarly, it is established pursuant to the Illinois Constitution that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11.

■■■ The proper sentence to be imposed should be based upon the particular circumstances of each individual case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Bolyard* (1975), 61 Ill. 2d 583, 589, 338 N.E.2d 168.) The factors to be considered in imposing a sentence include the nature of the act constituting the crime, credibility, demeanor, general moral character, social environment, mentality, habits and age of the defendant, and the possibility of rehabilitation. *People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138; *People v. Stewart* (1984), 104 Ill. 2d 463, 492, 473 N.E.2d 1227; *People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 432.

In the case at bar, the defendant was convicted of aggravated criminal sexual assault and unlawful restraint, crimes committed against a 12-year-old girl. A conviction for aggravated criminal sexual assault, a Class X felony, carries a sentence of from 6 to 30 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) The defendant was sentenced to 12 years' imprisonment, a sentence well within the statutory range. However, as earlier noted, defendant argues that certain mitigating factors and the judge's disfavor of sex offenders warrant a reduction in his sentence.

The record indicates the following at the time the defendant was arrested. He was 23 years old and unemployed. He dropped out of high school in his junior year, but enrolled in class to receive a high school equivalency certificate (GED) subsequent to his arrest. He was drug free but did smoke marijuana for a period of time when he was

21 years old. He was not married, but was residing with the mother of his two children. Although he suffered no physical or mental problems, defendant has been an alcohol abuser since the rape of his girlfriend and burglary of her apartment.

The record also discloses the defendant has a good family background, except for reoccurring problems with his step-father over the years. He has no prior criminal record and a fair employment record. During the sentencing hearing, the wife of a minister, a friend of the defendant's mother for over 30 years, testified in his behalf. Additionally, the defendant's mother testified in his behalf and he testified on his own behalf. The State argues that an aggravating factor is the defendant's anger towards everyone and the fact that he attacked, assaulted and threatened harm to a minor, a 13-year-old girl. (The record is unclear whether the complainant was 12 or 13 years old at the time of the incident.)

 The supreme court has set forth the standard for review of the propriety of a sentence. Citing *La Pointe*, the supreme court in *People v. Younger* (1986), 112 Ill. 2d 422, 494 N.E.2d 145, stated:

> " 'The determination and imposition of a sentence is a matter involving considerable judicial discretion, and our recent cases have repeatedly emphasized that the standard of review to be applied in determining whether a sentence is excessive is: Did the trial judge abuse his discretion in imposing that sentence? [Citations.]
>
> ∗∗∗
>
> The Unified Code of Corrections vests a wide discretion in sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. [Citation.] We held in *Perruquet* [68 Ill. 2d 149], and emphasize here that "the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." 68 Ill. 2d 149, 154.' " 112 Ill. 2d at 427, quoting *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93.

 Here, in sentencing the defendant, the trial judge took into consideration the effect the incident would have on the complainant. The court stated that while the defendant would do his time and come out, the complainant would have to live with the incident for the rest of her life. The judge added that the defendant committed what he considered one of the most despicable crimes that exist and that he was very severe in punishments in sexual cases, particularly in ones involving children; however, the record discloses that the judge con-

sidered other factors in aggravation. The court considered the factor of the threatened harm to the complainant, *i.e.*, the defendant had threatened to kill her and the factor of the public's safety, *i.e.*, that the defendant was angry because someone had raped his girlfriend. We believe it was proper for the court to consider the public safety and the harm or threatened harm caused to the victim as factors in aggravation. See *People v. Saldivar* (1986), 113 Ill. 2d 256, 269, 497 N.E.2d 1138.

We further believe that the mitigating factors offered by the defendant, that he had no prior convictions, was regularly employed, and had a relatively stable family background, required a balance with the factors in aggravation. The record reveals that the trial judge weighed the mitigating factors presented to it before imposing the sentence of 12 years for aggravated criminal sexual assault; nevertheless, the complainant was a minor, who was threatened by the defendant at gunpoint while walking to her class at the neighborhood grammar school. The defendant was unemployed, angry at the world because of a rape committed against his girlfriend, and an alcohol abuser. In our opinion, the sentence imposed is not highly disproportionate to the offense and is not an abuse of discretion. Accord *People v. Williams* (1986), 146 Ill. App. 3d 638, 497 N.E.2d 192.

■■ Defendant asserts that the trial judge was predisposed to severely punish sex offenders. (*Zemke*, 159 Ill. App. 3d at 629.) We have examined the record and conclude that the defendant has failed to demonstrate that judicial prejudice was the factor which resulted in his sentence or that the sentence imposed was excessive under the circumstances. Hence, we decline to follow the *Zemke* decision under the circumstances here. In *Zemke*, the court considered the trial judge's refusal to consider probation and his imposition of the maximum sentence possible, primarily because defendant was a member of class of offenders disfavored by the judge, a result which may have been harsh and unnecessary under the facts there presented. This was not the situation in the present case.

Here, while the record does disclose that the trial judge held strong opinions about sex offenders, especially ones involving children, the record does not indicate that the trial judge automatically imposed the 12-year-sentence because of these views.

The trial judge noted:

> "When I step on this bench, I never know what I am going to sentence a young man until I hear everything. And as I sat here now, I didn't know until I heard all the evidence."

Although the judge's comments may have been improper, he did prop-

erly consider the serious and perverse nature of the actions the defendant committed against a child. This action did warrant some admonishments from the trial court concerning punishment in sexual offense cases. We conclude that when reviewed as a whole, the record does not reflect that the trial judge imposed the sentence because of his personal views about sex offenders and further notice that the sentence was not excessive under the circumstances. See *People v. Keyes* (1988), 175 Ill. App. 3d 1013, 1018, 530 N.E.2d 708. See also *People v. Spears* (1988), 169 Ill. App. 3d 470, 525 N.E.2d 877, *appeal denied* (1988), 122 Ill. 2d 589, 530 N.E.2d 259; *People v. Williams* (1986), 146 Ill. App. 3d 767, 497 N.E.2d 377; *People v. Glass* (1986), 144 Ill. App. 3d 296, 494 N.E.2d 886. Accord *People v. Van Ostran* (1988), 168 Ill. App. 3d 517, 522 N.E.2d 851; *People v. Bollman* (1987), 163 Ill. App. 3d 621, 516 N.E.2d 870, *appeal denied* (1988), 119 Ill. 2d 561, 522 N.E.2d 1248. Compare *People v. Zemke* (1987), 159 Ill. App. 3d 629, 512 N.E.2d 374.

Therefore, since we find that the sentence falls within the permissive statutory limit, and the record does not reveal an abuse of discretion, the sentence will not be disturbed on review.

Accordingly, for all of the above reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

QUINLAN and O'CONNOR, JJ., concur.