THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FERMIN FLORES, Defendant-Appellant.

Second District   No. 2—88—0156

Opinion filed January 22, 1990.

503

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Roger T. Russell, State's Attorney, of Belvidere (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Fermin Flores, was indicted for murder and was convicted by a jury in the circuit court of Boone County of involuntary manslaughter in connection with the death of his girlfriend, Sandra Loveless. (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a).) He was sentenced to imprisonment in the Department of Corrections for 4½ years.

Defendant asserts that the court erred in denying his motion to discharge the jury panel. At issue is whether he presented a *prima facie* case of a violation of the fair–cross-section requirement. Defendant's contention is that Boone County's petit jury selection system, which draws potential jurors from the voter registration list, resulted in an underrepresentation of Hispanics, which thereby deprived him of his right to a jury drawn from a fair cross-section of the community and his right to equal protection under the law.

The defendant filed a timely motion to discharge the jury panel pursuant to section 114—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—3). This motion alleged that the

defendant was denied his right to a fair and impartial jury because the venires called in Boone County did not reflect a representative cross-section of the community. In addition to asserting that there were no Hispanic individuals in the instant venire, the defendant alleged the 1980 census showed that 4.3% of Boone County's population was of Hispanic descent. Accordingly, he concluded that on an 80-person jury panel, 3.44 should be of Hispanic descent, and the probability of one Hispanic being selected to a 12-person jury is approximately 31%, and the probability of two Hispanics being selected is 8%. The defendant's motion further alleged that for the period July 1980 to March 1987, 17 "Venire for Jurors" were issued summoning 1,260 people. (Testimony at the hearing and defendant's argument here use the figure 1,360.) Of the surnames shown thereon, only five were Spanish. This computes to .004%, which demonstrates a substantial underrepresentation on jury venires of Boone County's Hispanic population.

When the motion was presented, defense counsel acknowledged that the venire is derived by random selection from the voter registration list in Boone County. Counsel further acknowledged that it was not the defendant's contention that the county had purposefully excluded Hispanics, but that it may be that Hispanics do not register to vote and so would not be on the list. Counsel suggested more appropriate alternatives were available and named the driver's license holder list as an example.

At the hearing held on the defendant's motion, it was stipulated based on defendant's exhibit No. 1 that the Hispanic population of Boone County according to the 1980 census was 4.3%. It was also stipulated that defendant's group exhibit No. 2 reflected the names of persons that were actually selected to serve on jury panels in Boone County for the eight-year period 1980 to 1987. It was further stipulated that People's exhibit No. 1 was a January 1985 list of the names of 1,394 individuals which represented every tenth name on the voter registration list picked by the circuit court clerk to be summoned for jury service. The most recent jury panel selected in September 1987 was randomly selected from amongst those names.

Dr. Burley Bechdolt, an associate professor of economics at Northern Illinois University, was called to testify concerning the statistical probability of Hispanic participation on petit juries in Boone County. Dr. Bechdolt described what the binomial probability distribution theory meant, and, based on the figures obtained from the census report and other pertinent materials, he related that with an Hispanic population of 4.3%, the odds of having one Hispanic on a 12-person

jury was 31.8% and the odds of having two Hispanics on a 12-person jury was 8.5%. Dr. Bechdolt testified further it was his understanding that an examination of the 1,360 surnames on the "Venire for Jurors" lists revealed only five Hispanic surnames. Based on that number of Hispanic surnames, Dr. Bechdolt calculated there was a 95.3% probability of having no Hispanics on any given jury. In sum, Dr. Bechdolt found that there was a high probability that "[Y]ou're not going to get any Hispanics on a jury of 12 people."

Dr. Bechdolt testified further based on that number that the probability of having one Hispanic on a petit jury was 4.6%; the probability of having two Hispanics on a jury was .127%. Dr. Bechdolt opined it would be virtually impossible to have two persons of Hispanic descent on a petit jury in Boone County. Dr. Bechdolt calculated the degree of underrepresentation for Hispanics in Boone County based on the 1980 U.S. census was 90.7%. In calculating this underrepresentation figure, Dr. Bechdolt assumed the 1980 census was correct, that the information about Spanish surnames on the list was correct, and that selection of the jury venire from the voter registration list was a random process.

On cross-examination, Dr. Bechdolt stated that he could not positively identify a number of certain surnames as belonging to Hispanic individuals and that he had been told that only five Hispanics had served on petit juries since 1980. He also testified he did not know what percentage of Hispanics in Boone County were 18 years old or how old they were in 1980 when the census was taken. He further testified he did not know what percentage of Hispanics in Boone County could understand the English language or had anglicized their names. He stated he had no background in genealogy, and he did not know how many Hispanic people had moved in or out of Boone County since 1980.

In response to a query by the court, Dr. Bechdolt stated his determination of the percentage of underrepresentativeness of Hispanics in Boone County would remain the same even if he began his calculations with the "larger population" rather than the jury of 12 (*i.e.*, the voter registration list from which 10% are randomly selected and then randomly pared down to a field of 80 persons from which the 12 jurors are drawn).

Following Dr. Bechdolt's testimony, argument ensued as to whether the defendant had presented a *prima facie* case of violation of the fair–cross-section requirement. Defense counsel argued that defendant's group exhibit No. 2 indicated that of the many persons shown on the list as having been selected to serve on jury panels from

1980 to 1987, only five had Hispanic surnames. Counsel stated the five surnames were identified by himself and the deputy circuit court clerk by going through the list. Counsel argued the prosecution's own exhibit No. 1, the every-tenth-name list drawn by the circuit court clerk from the voter registration list, reflected "a very few Hispanic surnames." *Inter alia*, defense counsel posited that a more equitable cross-section of Boone County could be obtained through the use of the driver's license holder list instead of the voter registration list.

In his argument in response, the prosecutor noted defense counsel is not a genealogist and has no background in determining the ethnic origin of names. By his own count on People's exhibit No. 1, the prosecutor identified 14 possibly Hispanic surnames. He pointed out the defendant's evidence did not take into account how many Hispanic persons were under the age of 18 or may have moved or whether some of the non-Hispanic names on the list were, in fact, Hispanics who had married. The prosecutor further argued Dr. Bechdolt's testimony was based only on the surname information which was given to him by defense counsel.

The trial court denied the motion to discharge the jury panel. Among other issues raised in his post-trial motion, the defendant alleged the lack of Hispanics on the panel of prospective jurors deprived him of a jury selected from a fair cross-section of the community and constituted a systematic exclusion or underrepresentation of Hispanics. The trial court denied this motion and the defendant appealed.

### FAIR–CROSS-SECTION REQUIREMENT

The defendant contends he presented a *prima facie* case of violation of the fair–cross-section requirement in that the Boone County jury selection system results in a substantial underrepresentation of Hispanics on jury venires and, inasmuch as the State failed to present a significant State interest which would justify such underrepresentation, he requests his conviction be reversed and the cause remanded for a new trial before a jury selected from sources that adequately represent Hispanics.

The defendant's right to a petit jury drawn from a fair cross-section of the community is embodied in the sixth amendment of the United States Constitution. (U.S. Const., amend. VI; *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 42 L. Ed. 2d 690, 697, 95 S. Ct. 692, 697.) In order to show a *prima facie* violation of this fair–cross-section requirement, the defendant must show (1) that the group allegedly excluded is a distinctive group in the community; (2) that the underrepresentation of that group in venires from which juries are se-

lected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to the systematic exclusion of that distinctive group in the jury-selection process. (*Duren v. Missouri* (1979), 439 U.S. 357, 364, 58 L. Ed. 2d 579, 587, 99 S. Ct. 664, 668; *People v. Sledge* (1989), 183 Ill. App. 3d 1035, 1043-44.) The defendant need not be a member of the group alleged to be excluded in order to raise a fair–cross-section challenge to the venire (*Taylor*, 419 U.S. at 526, 42 L. Ed. 2d at 695, 95 S. Ct. at 696-97), and no evidence of intent to discriminate is required (*People v. Harris* (1984), 36 Cal. 3d 36, 56-57, 679 P.2d 433, 445, 201 Cal. Rptr. 782, 794). When the defendant has presented a *prima facie* case, the burden shifts to the State to demonstrate that a significant State interest—not merely rational grounds or administrative convenience—justifies the selection process which results in the underrepresentation. *Duren*, 439 U.S. at 367-68, 58 L. Ed. 2d at 589, 99 S. Ct. at 670; *People v. Broadnax* (1988), 177 Ill. App. 3d 818, 827-28.

■ The State concedes the defendant has met the first element of his *prima facie* case: Hispanics have been recognized to be a distinctive group in the community. (*Lockhart v. McCree* (1986), 476 U.S. 162, 175, 90 L. Ed. 2d 137, 149, 106 S. Ct. 1758, 1766; *Broadnax*, 177 Ill. App. 3d at 828.) It argues the defendant has failed to establish the second and third elements of his *prima facie* case, however.

Defendant posits he established the second element—that the representation of Hispanics in jury venires in Boone County is not fair and reasonable in relation to the number of Hispanics in Boone County—with evidence from the 1980 census that the Hispanic population of Boone County was 4.3%, and that out of 1,360 names on Boone County venire lists, only five surnames were Spanish. Defendant contends his reliance on Spanish surnames as evidence of ethnicity was proper, citing in support *Hernandez v. Texas* (1954), 347 U.S. 475, 98 L. Ed. 866, 74 S. Ct. 667, and *Castaneda v. Partida* (1977), 430 U.S. 482, 51 L. Ed. 2d 498, 97 S. Ct. 1272.

Although the identifiablity of Spanish surnames was acknowledged in both of those cases, the State in Castaneda raised no challenge to the reliability of the statistics offered by the defendant, and persons of Spanish surnames included in the census count were determined by reference to a list of 8,000 Spanish surnames compiled by the Immigration and Naturalization Service. (*Castaneda*, 430 U.S. at 486 n.5, 51 L. Ed. 2d at 505 n.5, 97 S. Ct. at 1276 n.5.) The State here challenged the reliability of the defendant's seven-year-old census figures, which had not been supplemented with any later studies of population changes as was done in *People v. Harris* (1984), 36 Cal. 3d

36, 47, 679 P.2d 433, 438, 201 Cal. Rptr. 782, 787. The State also challenged the reliability of the defendant's identification of Spanish surnames on the venire lists which, as defense counsel admitted, was accomplished by him going over the lists with the circuit court clerk. Expert testimony could have been offered on this point as was done in *Broadnax* (177 Ill. App. 3d at 823) or reference made to a list such as the one noted in *Castaneda* or a simple survey of veniremen conducted, as in *Harris*, which included a question as to the venireman's ethnicity. The only portion of the defendant's group exhibit No. 2 included in the supplemental record (which was stipulated to reflect the jurors that were actually selected to serve on jury panels in Boone County from 1980 to 1987) consists of five "Venire for Jurors" lists dated from July 30, 1985, to July 22, 1987, showing 400 names. Consequently, any possibility of an independent analysis of the 1,360-name venire lists by this court for the presence of Spanish surnames has been foreclosed.

Inasmuch as Dr. Bechdolt's testimony was premised on the seven-year-old census figures and defense counsel's unsubstantiated representation that only five Spanish-surnamed persons appeared on the venire lists, the reliability of Bechdolt's statistical probability calculations is questionable. Moreover, as the State points out, the statistical probability of having either one or two Hispanics seated on a jury of 12 in Boone County is flawed since such statistical probability presupposes randomness whereas there are any number of proper reasons why some veniremen will not be chosen as petit jurors considering dismissals for cause and peremptory challenges.

■ We agree with the State that the defendant's evidence of underrepresentation was unreliable and insufficient to establish the second element of his *prima facie* case. Recent decisions of this court support the conclusion that the defendant's evidence here was insufficient. In *Broadnax*, we upheld the circuit court's finding that the defendant's evidence was inadequate and insufficient to establish a *prima facie* case of a fair–cross-section violation, and the defendant there offered far more evidence than the defendant here. The defendant's evidence in *Broadnax* included census information, legislative debates concerning amendments to the jury selection statutes (Ill. Rev. Stat. 1985, ch. 78, pars. 1, 25), expert testimony regarding Hispanic surnames, testimony regarding current venire selection practices, visual observation of veniremen over a four-month period by three different persons, and affidavits from three attorneys whose collective experience encompassed 195 jury trials in Kane County over a 26-year period (*Broadnax*, 177 Ill. App. 3d at 823-25.) In our other re-

cent decision finding the defendant failed to present a *prima facie* case, *People v. Sledge,* the defendant offered only the testimony of an acting jury commissioner for Du Page County which established that approximately 320 jurors were randomly selected from a voter registration list and summoned to the courthouse each week. Of those, the jury commissioner "opined" that four to eight were black persons and that this number of blacks was about equal from week to week. This court found the defendant failed to establish the second and third elements of his *prima facie* case inasmuch as he failed to present any evidence establishing the population of black persons in Du Page County and that the systematic exclusion of blacks could not be due to the voter registration list selection process inasmuch as there is no way to determine a person's race from that selection process. *Sledge,* 183 Ill. App. 3d at 1044-45.

Because the defendant failed to establish the second element of his *prima facie* case, it was not error for the court to deny his motion to discharge the jury panel.

### EQUAL PROTECTION REQUIREMENT

■■ The defendant has waived the equal protection requirement issue by failing to raise it below. Defendant's motion to discharge the jury panel alleged only the violation of the fair–cross-section requirement, and there was no argument on the equal protection requirement issue during the hearing on the defendant's motion. It is clear that issues not raised in the trial court are considered waived on appeal (*People v. Holman* (1984), 103 Ill. 2d 133), although we may, in our discretion, consider such issues where the evidence is closely balanced or where the error is of such magnitude that the accused was denied a fair trial (*People v. Palmer* (1989), 188 Ill. App. 3d 414). The evidence here is not closely balanced, and the defendant has failed to demonstrate an error in the selection of the jury which denied him a fair trial.

· ■■ As we noted in *Broadnax,* the selection of both grand and petit jurors free from any taint of discriminatory purpose is a right guaranteed under the equal protection clause. (*Broadnax,* 177 Ill. App. 3d at 827, citing U.S. Const., amend. XIV; *Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664.) A defendant has presented a *prima facie* case of an equal protection violation in the selection of a petit jury venire if he establishes (1) that the group to which he belongs is one that is a recognizable class of persons capable of being singled out for discriminatory treatment; (2) substantial underrepresentation of that recognizable class of persons over a significant

period of time; and (3) a discriminatory purpose in such underrepresentation which may be shown either by the strength of the statistical showing (*i.e.*, the "rule of exclusion") or by showing a selection procedure that is susceptible of abuse or is not racially neutral to support the inference of discrimination raised by substantial underrepresentation. (*Castaneda*, 430 U.S. at 494-95, 51 L. Ed. 2d at 510-11, 97 S. Ct. at 1280; *Broadnax*, 177 Ill. App. 3d at 830; *Sledge*, 183 Ill. App. 3d at 1046; *People v. Rosa* (1982), 111 Ill. App. 3d 384, 388.) Once the defendant establishes a *prima facie* case of an equal-protection violation, the burden shifts to the State to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures were employed. *Sledge*, 183 Ill. App. 3d at 1046; *Rosa*, 111 Ill. App. 3d at 388.

The State concedes that the defendant, an Hispanic, clearly has standing to challenge the Boone County jury selection system with respect to Hispanic jurors and, thus, the first element of the defendant's *prima facie* case has been established. The defendant argues he has met the "rule of exclusion" element of his *prima facie* case by showing unequivocally "that Hispanics are represented on petit juries substantially less than their proportion in the total population—4.3% of the general population versus .004% of 1,360 jurors picked in a nearly two-year period." As noted in *Broadnax*, " 'the idea behind the rule of exclusion is [that] *** [i]f a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors entered into the selection process.' *Castaneda*, 430 U.S. 482, 494 n.13, 51 L. Ed. 2d 498, 510 n.13, 97 S. Ct. 1272, 1280 n.13." (*Broadnax*, 177 Ill. App. 3d at 830.) Defendant notes that State has never refuted the substantiality of the underrepresentation shown by his statistical evidence but, rather, has challenged "only *** the reliability of [his] figures."

Without reliable figures, however, the defendant's statistics purportedly demonstrating the substantial underrepresentation of Hispanics are equally unreliable and any discriminatory purpose that conceivably could be deduced from such underrepresentation is nothing more than idle speculation. The State also challenges the defendant's showing of underrepresentation on the basis it was not shown to have occurred *over a significant period of time*. The statistical time period relied on here was the two-year period 1985 to 1987. As the State argues, the significance of this time period pales when compared with the 11-year period in *Castaneda* (430 U.S. at 494-96, 51 L. Ed. 2d at 510-11, 97 S. Ct. at 1280-81), and the defendant does not argue in re-

ply that the two-year period should be considered to be a "significant" period.

We conclude that the defendant failed to provide reliable statistics establishing substantial underrepresentation of Hispanics over a significant period of time in Boone County and, thus, failed to establish his *prima facie* case. Defendant's argument concerning the State's failure to rebut his equal protection challenge to the jury selection is not well taken where it is clear the trial court determined the defendant failed to establish his *prima facie* case and, thus, the burden never shifted to the State.

The judgment of the circuit court of Boone County is affirmed.

Affirmed.

DUNN and INGLIS, JJ., concur.