THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN HALLIMAN, Defendant-Appellant.

First District (2nd Division)   No. 1—92—0932

Opinion filed September 6, 1994.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Robin M. Bright, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

After a bench trial, the trial court found defendant guilty of three counts of aggravated battery and not guilty of armed violence. The trial court merged all counts of the aggravated battery into one finding and sentenced defendant to 30 months' probation. Defendant in this appeal raises one issue for this court's consideration: whether defendant was found guilty of aggravated battery beyond a reasonable doubt, where one of defendant's witnesses testified that he, rather than defendant, committed aggravated battery upon the victim. For the reasons stated below, we affirm the conviction and sentence.

The following facts were presented at trial. The victim, Garvey Walker, an off-duty police officer, testified that he arrived at the Essence Lounge, located at 71st Street and King Drive, between 2 and 2:30 a.m. on November 25, 1990. The victim was in plain clothes. During the time he was at the lounge, the victim drank two beers and a shot of alcohol. At about 3 a.m. the victim attempted to go to the bathroom, but the doorway was blocked by defendant and his two companions. The victim, defendant and his companions began to argue. The victim testified that defendant and his companions left the lounge at the owner's request.

The victim left the lounge 10 minutes later and walked across

71st Street to his car. Defendant approached the victim and asked him if he was the guy in the lounge. The victim answered, "I don't know what you're talking about." According to the victim, defendant and his companions tried to strike up a conversation with him. The victim testified that while he was looking at one of the other men, defendant struck him with "some type of object in the face." Defendant then reached inside the victim's coat and grabbed his gun. They struggled over the gun. Defendant got away from the victim and ran westbound toward King Drive with the victim in pursuit. The victim tackled defendant as several uniformed police officers came to his assistance. The victim was taken to Jackson Park Hospital emergency room, where it was determined that he had sustained a fracture to his eye socket. Later, the victim was transferred to Michael Reese Hospital for surgery.

Officer Vivian Lindsey testified that she had been a police officer with the Chicago police department for four years. On the date and time of the occurrence she and her partner, Katherine Ambrose, were patrolling the area of 71st Street and King Drive in their squad car. At that time, they witnessed an altercation between defendant and the victim. Officer Lindsey further testified that she saw defendant hit the victim in the face with a glass bottle, then lunge toward the victim and remove a handgun from the victim's waist. Defendant then proceeded to run westbound on 71st Street toward King Drive. When defendant noticed the police officers, he stopped and was tackled by the victim and the police officers. The officers wrestled the handgun away from defendant.

On cross-examination, Officer Lindsey testified that she was approximately 25 to 30 feet away from the scene and that she was "positive" that defendant was the individual she saw hit the victim with the bottle. Officer Lindsey also testified that defendant was intoxicated at the time of his arrest.

Bruce Thurman, one of defendant's companions on the night of the incident, testified for the defense. On direct examination he testified that he, defendant and another man, Virgil Smith, entered the lounge at about 12 a.m. to eat some food they had purchased from a restaurant across the street. At about 1:30 a.m., defendant went to the back of the lounge to use the telephone. Thurman had ordered a bottle of beer from the bar. When Thurman came back from the bar, he saw defendant in an argument with the victim. He testified that he did not know, nor was he informed, that the victim was a police officer.

After leaving the lounge at the request of the owner, Thurman, Smith and defendant went back to the restaurant across the street.

While they were standing outside the restaurant, the victim yelled at them from across the street, "I'll kick all y'all ***." As the victim crossed the street, defendant went out to meet him. According to Thurman, the victim pulled out a gun and hit defendant two times in the face with it. After the victim hit defendant with the gun, Thurman ran up and hit the victim with the bottle of beer he had purchased at the lounge. Thurman testified that he never saw the victim's gun in defendant's hand and that he had never seen the gun before the victim hit defendant with it. Thurman fled after he hit the victim with the bottle.

At the close of Thurman's direct examination, the trial court recessed the trial in order to procure a public defender to advise Thurman of his rights. After discussion with the public defender, Thurman invoked his right against self-incrimination and the trial court struck his testimony from the record.

The trial resumed on December 9, 1991. Thurman, in the interim, had secured private counsel. Thurman informed the trial court that he wished to retake the stand and continue his testimony, waiving his right against self-incrimination under the fifth amendment.

Thurman's testimony resumed with cross-examination. On cross, Thurman repeated his earlier testimony, stating that after he saw the victim hit defendant with a gun, he ran up to the victim, hit him with the bottle "and kept running."

Defendant took the stand and testified that the argument began in the lounge while he was on the telephone. According to defendant, he was arguing with a woman who accused him of blocking the entrance to the rest room. The victim came to the woman's defense and subsequently began arguing with defendant.

Defendant's account of what happened on the street was similar to Thurman's testimony, except that defendant testified that he hit the victim with his fist after the victim struck him with the gun. After Thurman ran up and hit the victim with the bottle, defendant "dived" at the victim, wrestling him to the ground. At that time, an officer told defendant and Virgil Smith to "freeze." Defendant testified that he was trying to get the gun away from the victim. The gun was never in defendant's hand. At the time of the incident, defendant was unaware that the victim was a police officer and believed the victim to be intoxicated.

The trial court found defendant guilty of aggravated battery, but not guilty of armed violence, and sentenced defendant to 30 months' probation. Defendant's motion for a new trial was denied.

Defendant argues that he was not proven guilty of aggravated battery beyond a reasonable doubt because the judicial confession of

Bruce Thurman showed that Thurman, not defendant, hit the victim with a glass bottle. The State argues that the evidence proved defendant guilty beyond a reasonable doubt because the victim testified that he saw defendant hit him with the bottle. The State further argues that the victim's testimony was corroborated by Officer Lindsey, who witnessed the incident and who positively identified defendant as the person who hit the victim with the bottle.

In a bench trial, it is the province of the trial court, as the trier of fact, to determine the credibility of witnesses, to weigh the evidence and to draw reasonable inferences therefrom. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) A reviewing court will not reverse the judgment of a trial court unless the proof is so unsatisfactory, improbable or implausible as to raise a reasonable doubt as to the defendant's guilt. The identification of the accused by a single, credible witness is sufficient to sustain the conviction of a defendant. *People v. Palmer* (1989), 188 Ill. App. 3d 414, 421, 545 N.E.2d 743.

■ Bruce Thurman's admission on the stand that he, rather than defendant, committed the aggravated battery upon the victim was an admission against interest. Judicial confessions are regarded as highly probative precisely because such confessions are statements damaging to the interests of the declarant. (*People v. Uselding* (1967), 85 Ill. App. 2d 323, 325, 230 N.E.2d 1.) However, judicial confessions are not flawless, and thus, they are not considered conclusive proof of every statement made therein. (*Uselding*, 85 Ill. App. 2d at 325.) Judicial confessions, however voluntary, may be motivated by a self-serving purpose rather than out of a sense of guilt. *Uselding*, 85 Ill. App. 2d 323.

In the case at bar, Thurman's statement at trial that he, rather than defendant, was the person who hit the victim with the glass bottle may have been motivated out of a sense of loyalty to his friend, rather than any sense of guilt. In either case, Thurman's statement was contrary to the victim's testimony and the eyewitness testimony of Officer Lindsey, who testified that she was no further than 30 feet away from the altercation and that she saw defendant hit the victim with the glass bottle.

■ It was the function of the trial judge, as trier of fact, to determine the credibility of the witnesses and to resolve conflicting evidence. (*People v. Walker* (1993), 253 Ill. App. 3d 93, 103-04, 624 N.E.2d 1353.) We cannot say, reviewing the record in its entirety, that defendant's conviction was based on unsatisfactory evidence so as to raise a reasonable doubt as to his guilt. (*Walker*, 253 Ill. App. 3d at 103-04; *Uselding*, 85 Ill. App. 2d at 326.) Notwithstanding the judicial confession of defendant's companion, Bruce Thurman, the

trial court had sufficient, credible evidence from which to find defendant guilty of aggravated battery.

For the above reasons, the conviction and sentence of defendant is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.